## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK AVELLINO and<br>LISA AVELLINO, h/w<br>1949 Ritner Street<br>Philadelphia, PA 19145<br><br>*Plaintiffs,*<br><br>v.<br><br>HOME DEPOT U.S.A., INC.<br>c/o Corporation Service Company, Registered<br>Agent<br>251 Little Falls Drive<br>Wilmington, DE 19808<br><br>THE HOME DEPOT, INC.<br>c/o Corporation Service Company, Registered<br>Agent<br>251 Little Falls Drive<br>Wilmington, DE 19808<br><br>DIVISIONS, INC.<br>c/o Corporation Service Company, Registered<br>Agent<br>315 High Street<br>Frankfort, KY 40601<br><br>EVERGREEN CONSOLIDATED LLC<br>c/o Douglas H. Moini CPA, Agent/Service of<br>Process<br>210 New Road, Unit 9<br>Linwood, NJ 08221<br><br>*Defendants.* | CIVIL ACTION<br><br>NO. 26-4892<br><br>*JURY TRIAL DEMANDED* |

## COMPLAINT

**INTRODUCTION**

1.    This case involves a slip and fall on black ice in the parking lot of the Home Depot store

in South Philadelphia on Columbus Boulevard leading to emergency spinal surgery, brain injury, and other severe damages. Outrageously, on February 24, 2026—for more than 19 hours after snowfall and other precipitation ended and 4 hours after the declared end of a snow emergency—Defendants allowed black ice to form and remain in and around customer parking spaces by failing to employ proper snow and ice removal services and willfully piling and otherwise leaving unmaintained mounds of snow in the parking lot which predictably melted and refroze as black ice. Despite Defendants' knowledge of these hazardous conditions (and Home Depot's enormous inventory of snowplows, shovels, de-icing products, warning signs, caution tape, barricades, and cones that were readily available inside the store for winter emergencies), Defendants recklessly failed to eliminate (or even warn of) these dangerous conditions. As a direct result, Plaintiff Mark Avellino violently slipped and fell on the black ice on February 24, 2026, struck his head on the pavement, and lost consciousness. After reporting the incident, Mr. Avellino was transported to the hospital and then transferred to a Level I Trauma Center for an emergency surgical diskectomy and spinal fusion at C5-7 with implantation of a two-level cervical plate with screws and allograft bone wedges in order to stabilize his severely injured cervical spine. As further result of Defendants' reckless disregard for the safety of their business invitees, Mr. Avellino also suffers from a traumatic brain injury and other severe and permanent injuries.

**THE PARTIES**

2.    Plaintiffs Mark Avellino and Lisa Avellino, husband and wife, are citizens of the Commonwealth of Pennsylvania.

2

3.    Defendant Home Depot U.S.A., Inc., a corporation organized under the law of the State of Delaware, maintains its principal place of business in the State of Georgia.

4.    Defendant The Home Depot, Inc., a corporation organized under the law of the State of Delaware, maintains its principal place of business in the State of Georgia. (Home Depot U.S.A., Inc., and The Home Depot, Inc., are collectively referred to as **Home Depot**).

5.    Defendant Divisions, Inc., (**Divisions**) a corporation organized under the law of the Commonwealth of Kentucky, maintains its principal place of business in the State of Ohio.

6.    Defendant Evergreen Consolidated, LLC, (**Evergreen**) is a limited liability company organized under the law of the State of New Jersey and its members are, upon information and belief, citizens of states other than the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

7.    This Court has subject matter jurisdiction based upon the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

8.    The amount in controversy and damages, exclusive of interest and costs, exceed the local compulsory arbitration limit of $150,000 under Local Civil Rule 53.2(3)(A).

9.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Pennsylvania.

**FACTS**

10.    Upon information and belief, at all relevant times, Defendants Home Depot owned and/or retained the right and responsibility to possess, manage, operate, and maintain the Home

3

Depot store and adjoining customer parking lot in South Philadelphia at the above captioned addressed known as Home Depot Store No. 4101.

11. Upon information and belief, at all relevant times, Home Depot contracted with and/or otherwise engaged Defendant Divisions to maintain the exterior of the property at Home Depot Store No. 4101 and provide snow and ice removal services pursuant to an agreement believed to be known as a Master Services Agreement (**MSA**).

12. Upon information and belief, pursuant to the MSA, Home Depot and Divisions agreed in relevant part to the effect that:

> Home Depot's primary mission of de-icing and snow removal operations is to provide safe conditions for our customers and associates.
>
> Special consideration will be given to maintaining a safe condition on drive lanes, parking areas, and walkway surfaces. The safety of pedestrians must never be compromised.
>
> Home Depot sites are repeatedly visited during storms and their aftermath. Our vendor's focus should be to guard against hazardous conditions for Home Depot customers and associates at all times.
>
> In order to achieve this, all vendors should be able to respond promptly to a snow emergency to avoid any interruption in Home Depot business activity. Vendors are responsible to respond proactively to snow storms.
>
> Slip Free and Safe Environment on Home Depot property requires complete curb to curb services beginning with main entrance and exists, public sidewalks, primary parking areas, drive lanes along the rear, side and front of premises, employee parking areas, loading docks, emergency exit clearance as well as all asphalt or concrete areas that fall within Home Depot's obligation to maintain.
> …
>
> Primary Vendor [*i.e.*, Divisions] shall furnish all necessary labor, supervision, Equipment, chemicals/agents, and Materials needed to complete the Snow Removal Services.
>
> The Snow Removal Services shall consist of removing all snow and ice from the Property and consistently keep the entrances, drive aisles, parking spaces and

sidewalks free from ice and snow. At no time, shall there be a hazardous/life safety condition.

**Area of Coverage:**

Primary Vendor will be responsible for ensuring a slip-free environment on the Property including, but not limited to all asphalt/concrete parking spaces, property entrances and exits, drive lanes in the front, side(s) and rear of the property, … **cart corrals** and any Shared CAM responsibilities, if applicable.

**Performance Requirements:**

a)      The Primary Vendor will provide at their own expense all Materials, labor, services, tools, equipment, supplies and any other items required to provide the Snow Removal Services for each Property.

b)      Snow plowing, snow removal and anti-icing or de-icing services will be performed as needed and Primary Vendor shall be available at all times in case such need arises.

c)      All work at Home Depot Property shall be performed prior to 4:00 a.m. each day and continue as needed to ensure all areas of coverage, as defined herein are clean, safe and passable for employees entering the facility by 5:00 a.m.

e)      When surfaces are slippery and/or temperatures are at or below freezing, Primary Vendor is responsible for applying anti-icing and de-icing material to all area of coverage to ensure slip free conditions at all times.

f)      Primary Vendor will ensure anti-icing or deicing chemicals are applied proactively for each storm event, with appropriate follow-up applications to prevent snow packs from forming.

i)      Post Storm cleanup is required at the end of the each storm. Snow is to be consolidated in the approved snow storage areas, plowed back as far as possible away from the building and stacked as high as possible without obstructing pedestrian's or operators of motor vehicles' visibility.

j)      The Primary Vendor will proactively pre-treat (Anti-icing) for freezing precipitation/ice events with no snow fall minimum requirement. Anti-icing is required prior to all snow events and ongoing de-icing is required to occur throughout the event.

k)      Snow Plowing is required for all events of snow fall of 1" and above. Services during these events are expected to commence within one hour of event beginning and is to continue throughout the event.

l)      **The Primary Vendor will maintain piled snow and the surrounding areas, including but not limited to proactively treating thawing and re-freezing resulting from the piled snow**.

n)      All snow removal operations should be conducted in a manner that does not impact store operations.

v)      Primary Vendor will pile snow in designated and predetermined areas on the Home Depot Property[.]

z)      Primary Vendor is responsible to ensure that all **cart corrals** are cleared of snow and ice.

aa)     Primary Vendor will provide emergency contact telephone numbers available 24 hours a day, and seven days a week. Primary Vendor will have crew onsite within one hour of work order acceptance.

bb)     The Primary Vendor shall comply with the MSA.

**<u>General Requirements</u>**

h)      Snow Removal Services that will be sub-contracted Sub-Vendors must meet same level of insurance and auditing requirements as the Primary Vendor.

k)      Primary Vendor will assume sole and complete responsibility for all Snow Removal Services, including safety of all persons and property.

p)      Primary Vendor shall require any and all Sub-Vendors to meet all terms and conditions as outlined in The Home Depot Master Service Agreement and the requirements within the Snow and Ice Management Specification and Scope of Work herein to the full extent required by the laws of the state in which the Snow Removal Services are provided.

(Emphasis added).

6

13. Upon information and belief, Home Depot and Divisions further agreed in the MSA that "[t]he parties recognize that serious injury could result to Home Depot and its business if Vendor breaches its obligations under this Agreement." In accordance with this recognition, Home Depot and Divisions agreed that, "[t]his engagement is nonexclusive and nothing in this Agreement will in any way restrict Home Depot's right to engage others to render the same or similar services."

14. Upon information and belief, Divisions further "represent[ed] and warrant[ed] [in the MSA] that … (c) all Services will be performed in a competent and professional manner by qualified Staff [inclusive of subcontractors], in accordance with industry standards, and in compliance with all applicable Laws (as defined herein), and all Services will be provided on a timely basis; … (f) the Services will be provided by Vendor's Staff having the appropriate level of skills and training and with the skills and qualifications necessary to perform the Services; [and] (g) the Services will conform to the specifications and requirements set forth in the Statement of Work for the Warranty Period[.]"

15. Upon information and belief, Divisions further agreed that to the extent it utilized a subcontractor, "(a) each subcontractor must have a written agreement with the Vendor that includes … insurance, representations and warranties and safety standards that are no less stringent than those of Vendor in this Agreement, and (b) Vendor shall exercise appropriate supervision of subcontractors…. Notwithstanding any subcontracting of any portion of the Services, Vendor will continue to be responsible for all of its obligations under this Agreement."

16.    Upon information and belief, at all relevant times Divisions subcontracted with and/or otherwise engaged Defendant Evergreen to provide snow and ice removal services at Home Depot Store No. 4101 pursuant to an agreement believed to be known as a Master Provider Agreement (**MPA**).

17.    Upon information and belief, pursuant to the MPA, Divisions and Evergreen agreed to the effect that:

2.    **Blanket Agreement**. …[T]his Agreement along with the other Contract Documents [defined to include "the agreement between Divisions and the owner or manager of the subject property [*i.e.*, Home Depot] where the Work/Project is being performed (the 'Prime Contract[,' *i.e.*, the MSA])] shall control and govern the relationship between Provider and Divisions with respect to such Work on any Project. Provider [*i.e.*, Evergreen] shall assume toward Divisions all the obligations and responsibilities which Divisions assumes with respect to the applicable Project.

4.    **Work**. Provider shall perform and otherwise provide at its own cost all tools, equipment, materials and labor necessary to complete the Work in accordance with the specifications of the applicable Service Agreement or other Contract Document. Provider shall cause any Work performed by it or any of Provider's subcontractors, subsubcontractors, material suppliers, and equipment suppliers (collectively, "Provider's Subs") pursuant hereto to be performed: (i) diligently and in a good and workmanlike manner using reasonable care and in strict accordance with all applicable federal, state and local statutes, laws, codes, regulations and ordinances…; (ii) using that level of care and skill ordinarily exercised by contractors with expertise in providing services similar to the Work contemplated hereunder; (iii) in a timely manner, with time being of the essence; (iv) with an adequate number of properly trained personnel that are licensed to perform any trades they are performing; and (v) in accordance with any rules or regulations adopted by Divisions, Divisions' client and/or the Owner.

5.    **Professionalism**. Provider agrees to complete its Work in a professional manner and to conduct its operations and hold itself out to the public in accordance with the same.

6.    **Site Investigation**. Provider represents and warrants to Divisions that it has made such investigation and inspection (including any required by the Contract Documents) as to the nature and location of the Work and general and local conditions at the Project site. Provider agrees that such site examination-inspection has included, but has not necessarily been limited to, the examination of: (i) the

8

location, condition, layout of structures, and nature of the site and surrounding areas including, if relevant, the character of the surface and subsurface conditions or obstacles to be encountered on, under and around the Project site and any access limitations at the Project site; (ii) generally prevailing and potential weather conditions; (iii) anticipated labor supply and costs; and (iv) availability and cost of materials, tools, and equipment.

12. **Warranties**. Provider represents and warrants all of the following: (i) that all Work, supplies, and materials furnished by or on behalf of Provider in connection with the Work shall be in conformance with the Contract Documents.

15. **Safety Reporting**. While performing services at any service location, Provider shall inspect and immediately notify Divisions by email (SafetyReports@Divisionsinc.com) regarding any condition or situation in or around the service location that could present a safety issue to person or property unless such issue shall be resolved through the immediate services performed by such Provider. For purposes of this inspection requirement, the service location shall mean any area within and around the area in which Provider is performing the Work.

35. **Backup Services**. If Divisions, any Owner or any client of Divisions shall determine in its sole discretion Provider failed to adequately or timely provide any work/services to be performed or materials to be furnished, Divisions may provide backup service or materials and engage a third party to perform Provider's duties agreed to herein and/or any Service Agreement.

18. Notwithstanding the contractual arrangements and agreements between and among Home Depot, Divisions, and Evergreen, each of the Defendants retained the responsibility to maintain the Home Depot customer parking lot free and clear of all snow and ice as set forth above and elsewise.

19. It was the duty of the Defendants, collectively, to keep and maintain the Home Depot customer parking lot in a safe condition for those persons lawfully thereon.

20. Beginning at 4:00 PM on February 22, 2026, Mayor Cherelle L. Parker declared a Snow Emergency for the City of Philadelphia because "severe winter weather is expected to impact travel and public safety" and the "[f]orecasts from the National Weather Service

anticipate heavy, wet snow, high winds, and snowfall rates intensifying to as much as two inches an hour."

21. According to data collected by the National Weather Services through its Automated Surface Observing Systems terminal at the Philadelphia International Airport (**ASOS Data**), snowfall in the area proximate to the Home Depot location in South Philadelphia ended at about 2:34 PM on February 23, 2026.

22. The declared Snow Emergency remained in effect until 6:00 AM on February 24, 2026.

23. Upon information and belief, during and after the declared Snow Emergency, the Home Depot store location in South Philadelphia remained open to the public (and advertised itself as open to the public) for the sale of goods and services including de-icing agents, snow shovels, plows, and other goods and materials for snow and ice removal and "severe weather essentials," as well as barricades, cones, warning signs, caution tape, and other goods sold to demarcate and/or cordon off dangerous areas and conditions, and Home Depot posted instructions and advertised the sale of goods for "Winter Weather Preparedness."

24. At all relevant times, each of the Defendants had a duty to inspect and maintain the Home Depot customer parking lot, including by preparing, making, and keeping the parking lot safe for customers and business invitees including Plaintiff.

25. Upon information and belief according to ASOS Data, from the time that snowfall ended at about 2:34 PM on February 23 through 10:00 AM on February 24 (over 19 hours), temperatures in the area fluctuated between a high of 4 degrees Celsius (39.2 degrees Fahrenheit) to a low of -2 degrees Celsius (28.4 degrees Fahrenheit).

26. At and before 10:00 AM on February 24, 2026, ice had accumulated and formed on the black top surface of the Home Depot customer parking lot in part due to Defendants' failures to consolidate snow in approved snow storage areas and ensure that all cart corrals were cleared of snow and ice.

27. Upon information and belief, Home Depot personnel arrived at work at Home Depot Store No. 4101 at about 5 AM on February 24, 2026 (over 14 hours after the snowfall ended) with the duty to inspect the premises to make sure they were safe, including inspecting the parking lots to make sure they were completely free of snow and ice which could pose a danger to business invitees. As such, upon information and belief, Home Depot knew or should have known that dangerous collections of snow and ice had formed and/or remained on the Home Depot customer parking lot and that the snow and ice was melting and refreezing as black ice. Despite the foregoing, and upon information and belief, Home Depot failed to take any appropriate action to cause the removal of the snow and ice, or provide necessary warnings, to ensure safe passage for arriving business invitees.

28. As a result of Defendants' failures, snow remained in unapproved areas, including in cart corrals, which thawed causing runoff to flow over adjacent parking spaces and refreeze as black ice as the temperatures fluctuated.

29. At all relevant times, it was open and obvious to Home Depot that Divisions and Evergreen had failed to comply with their snow and ice removal duties, and they took no appropriate actions to 1) cause Divisions and Evergreen to fully complete their snow and ice removal services, 2) make alternate arrangements to remove all snow and ice, and/or 3) mobilize Home Depot's substantial resources and supplies to remove snow and ice for the safe

passage of customers and/or to set up warnings and barricades or cordon off icy areas within Home Depot's customer parking lot to protect customers and direct customers away from unsafe areas.

30. Plaintiff Mark Avellino arrived by automobile to purchase goods and services from Home Depot at or about 10:00 AM on February 24, 2026 — over 19 hours after the snowfall ended at 2:34 PM on February 23 (and with no intervening precipitation) (according to ASOS Data), about five (5) hours after Home Depot employees arrived at work to prepare the property to greet customers, and four (4) hours after the declared Snow Emergency ended and the Home Depot store opened its doors to welcome customers.

31. Upon alighting from the passenger side of the vehicle parked in a space adjacent to an uncleared cart corral, Mark Avellino slipped and fell on black ice that had formed on Home Depot's ice-covered customer parking lot as a result of Defendants' negligence.

32. Upon information and belief, the black ice where Mr. Avellino fell was created and formed due to Defendants' failures to properly maintain the parking lot.

33. Defendants breached their duties of care and allowed the dangerous ice accumulation by:

a.    Failing to remove all snow and ice from the customer parking lot;

b.    Failing to utilize proper and sufficient materials, labor, services, tools, equipment, supplies and any other items required to provide the snow and ice removal services;

c.    Failing to provide snow plowing, snow removal, anti-icing, de-icing services as needed and at all times in case such need arises;

d.    Failing to ensure a clean, safe and passable parking lot surface for business invitees;

e.     Failing to apply anti-icing and de-icing material to all areas of the parking lot to ensure slip free conditions at all times;

f.     Failing to ensure anti-icing or de-icing chemicals were applied proactively for each storm event, with appropriate follow-up applications to prevent snow packs and ice from forming;

g.     Failing to perform adequate post storm cleanup and consolidate snow in the approved snow storage areas;

h.     Failing to adequately proactively pre-treat for freezing precipitation/ice events prior to the snowfall and de-ice throughout the period thereafter;

i.     Failing to adequately plow snow;

j.     Failing to proactively treat thawing and re-freezing conditions that result from the piled snow;

k.     Failing to pile snow in designated and predetermined areas on the Home Depot property;

l.     Failing to ensure that all cart corrals were cleared of snow and ice;

m.     Failing to inspect for dangerous conditions including ice formations on the Home Depot customer parking lot surface;

n.     Failing to warn business invitees of the dangerous icy condition in the Home Depot customer parking lot; and

o.     Failing to barricade or cordon off dangerous icy areas within the Home Depot customer parking lot.

34.    At the time he slipped and fell, Plaintiff Mark Avellino was business invitee of Defendants.

35. At the time he slipped and fell, Plaintiff Mark Avellino was a third-party beneficiary of the contracts for property maintenance and snow and ice removal and maintenance services between and among Defendants.

36. Upon information and belief, Defendants knew or should have known of the dangerous conditions existing within the Home Depot parking lot before Mr. Avellino's arrival on February 24, but negligently, recklessly, willfully, wantonly, and/or intentionally ignored the known dangers to their business invitees; failed to remediate the defective conditions; failed to warn of those conditions; and failed to take appropriate action to safeguard and protect Mr. Avellino and other customers from the known dangerous conditions that existed.

37. Defendants were responsible to prevent ice from forming and/or to clear the area of accumulated ice and snow so as to keep the premises safe for business invitees.

38. Upon information and belief, notwithstanding their duties, the Defendants carelessly, recklessly, and negligently created and/or allowed and permitted to remain on the premises the aforementioned dangerous and defective conditions, of which the Defendants each had actual and/or constructive notice.

39. Upon information and belief, despite the fact that the defective condition existed on the premises for a long period of time, it was not remediated, repaired, or covered by Defendants and Defendants provided no warning to business invitees such as Plaintiff.

40. Notwithstanding actual knowledge, Defendants refused and failed to correct the defective and dangerous conditions and consciously exposed Plaintiff Mark Avellino and other

14

business invitees to the risk of severe bodily harm in negligent, reckless or gross disregard the safety, health and welfare of Home Depot's business invitees.

41. Upon information and belief, the premises were at all times relevant hereto under the exclusive possession, custody and control of the Defendants, and/or their agents, servants, workers and employees.

42. Defendants conduct as described in this Complaint was outrageous such that a jury may properly impose punitive damages.

43. As a result of the fall, Mark Avellino struck his head on the black top surface, lost consciousness, and was taken to Methodist Hospital where he was immediately transferred to Thomas Jefferson University Hospital (a Level I Trauma Center) for emergency spinal surgery. Mark Avellino has remained under treatment for severe conditions including disabling spinal injuries, pain, and a traumatic brain injury.

44. Plaintiff Mark Avellino, in no manner, either by commission or omission, contributed to this accident or the injuries he sustained.

45. As a further result of the fall, Plaintiff Mark Avellino has suffered, and continues to suffer pain and suffering, loss of mobility, embarrassment, humiliation, loss of life's pleasures and other unliquidated damages.

46. Plaintiff Mark Avellino has also incurred by lien and otherwise, significant medical expenses and debt in an effort to correct or treat his injuries. Upon information and belief, such expenses will likely continue into the future.

47. As a direct and proximate result of Defendants' breaches of duty, Plaintiff Mark Avellino has and will continue to suffer other financial expenses and losses, the full extent of which are not yet known.

## COUNT I
## MARK AVELLINO VS. DEFENDANTS
## NEGLIGENCE

48. Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully at length herein.

49. The injuries and damages sustained by Mr. Avellino were caused solely by and/or were the direct and proximate result of the negligence, reckless, and intentional misconduct of the Defendants and/or Defendants' agents, servants, workers or employees in any or all of the following respects:

a. failing to keep the premises in a safe condition for persons lawfully using same;

b. creating and/or permitting the dangerous conditions to be and remain on the premises when Defendants knew, or in the exercise of reasonable care should have known, of the danger involved;

c. failing to cover or block off the dangerous condition created by the above described hazard;

d. failing to repair the dangerous condition of which Defendants knew or in the exercise of reasonable care should have known;

e. permitting persons, and Plaintiff in particular, to traverse the premises when the Defendants knew, or in the exercise of reasonable care, should have known, that it

16

was dangerous to do so and involved an unreasonable risk of harm to persons doing so;

f.   failing to notify or warn Plaintiff of the dangerous condition so that the hazard involved could be avoided;

g.   maintaining the premises in such a manner as to constitute a danger to persons lawfully thereon;

h.   failing to provide persons lawfully using the premises with a safe area to traverse said premises;

i.   failing to inspect or properly inspect the premises to discover the dangerous condition or inspecting so carelessly as not to have discovered the condition, notwithstanding that Defendants personnel were or should have been present at the Home Depot store hours before Mark Avellino arrived;

j.   maintaining the premises in an improper manner;

k.   employing personnel who were not sufficiently qualified to inspect the premises in a proper manner;

l.   inspecting the premises in an improper manner;

m.   failing to hire, employ or retain personnel sufficiently qualified to inspect the property and/or supervise maintenance of the premises;

n.   failing to exercise that degree of care and regard for the rights and safety of Plaintiff required under the circumstances;

o.   failing to alert responsible persons at Divisions, Evergreen, and Home Depot about the snow and ice accumulations in the customer parking lots, notwithstanding that

Defendants' personnel were present at the Home Depot store hours before Mark Avellino arrived and knew or should have known of snow and ice accumulations thereon;

p.     failing to mobilize Defendants' substantial resources and supplies to remove snow and ice for the safe passage of customers and/or set up warnings and barricades or cordon off icy areas within Home Depot's customer parking lot to protect customers and direct customers away from unsafe areas; and

q.     failing to make alternate arrangements to remove all snow and ice.

50.    Plaintiff Mark Avellino has suffered and will continue to suffer severe and life altering injuries and damages as a result of Defendants' joint and several negligent, reckless, intentional, wanton, and willful breaches of duty.

**COUNT II**
**MARK AVELLINO VS. ALL DEFENDANTS**
**BREACH OF CONTRACT**

51.    Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully at length herein.

52.    Upon information and belief, 1) Defendants Divisions and Evergreen breached their contracts with Home Depot to maintain the Home Depot customer parking lot free and clear of ice and snow; 2) Defendant Evergreen breached its agreement with Divisions to maintain the Home Depot customer parking lot free and clear of ice and snow; and 3) Home Depot and Divisions failed and otherwise refused to enforce their contractual rights to ensure the safety of Plaintiff Mark Avellino and business invitees generally.

18

53.    At all relevant times, Plaintiff Mark Avellino was a third-party beneficiary to these contracts.

54.    As a result of the aforesaid breaches of contract and the failure of Home Depot and Divisions to enforce contractual rights, Plaintiff Mark Avellino suffered and will continue to suffer severe and life-altering injuries and damages.

**COUNT III**
**LISA AVELLINO VS. ALL DEFENDANTS**
**LOSS OF CONSORTIUM**

55.    Plaintiffs incorporate the foregoing and subsequent paragraphs as though set forth fully at length herein.

56.    As a result of the foregoing, Plaintiff Lisa Avellino has been and will be deprived of the society, companionship, aid, and comfort of her husband Plaintiff Mark Avellino and has suffered a loss of consortium.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against each Defendant, jointly and severally, for punitive and compensatory damages, and all other available relief, in an amount in excess of the local compulsory arbitration limit of $150,000, exclusive of interest and costs.

**JOKELSON LAW GROUP, P.C.**

Date:    July 14, 2026            By:    s/ David E. Jokelson
                                           DAVID E. JOKELSON, ESQUIRE
                                           Pa. Atty. I.D. No. 73734
                                           DEREK E. JOKELSON, ESQUIRE
                                           Pa. Atty. I.D. No. 81047
                                           230 S. Broad Street, STE 1303
                                           Philadelphia, PA 19102
                                           (215) 735-7556
                                           *Attorneys for Plaintiffs*